UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| JONATHAN RUIZ CARREON,<br><br>Plaintiff,<br><br>vs.<br><br>ENERGY PANEL STRUCTURES, INC., UNITED DEVELOPMENT, LLC, ITW BUILDING COMPONENTS GROUP INC., UNITED DEVELOPMENT BUILDERS, LLC, BLOOMING VALLEY DAIRY, LLC,<br><br>Defendants. | 4:23-CV-04108-RAL<br><br><br>OPINION AND ORDER DENYING SUMMARY JUDGMENT |

Plaintiff Jonathan Ruiz Carreon filed a Complaint, raising various tort claims related to a barn collapse against Defendants Energy Panel Structures, Inc., United Development, LLC ("UD"), ITW Building Components Group Inc. ("ITW"), United Development Builders, LLC ("UDB"), and Blooming Valley Dairy, LLC ("BVD"). Doc. 60. UD and UDB (collectively "United Defendants")[1] filed a Motion for Summary Judgment on Carreon's claims against the United Defendants for negligence and gross negligence and ITW's crossclaims for contribution

---

[1] UD and UDB are two distinct entities with a shared owner, Arjan Blok. Doc. 89-4 at 5, 7. However, several filings in this case refer to them collectively. The Second Amended Complaint refers to UD and UDB collectively as "the United Defendants," and the negligence and gross negligence causes of action in Count V are alleged against the "United Defendants." Doc. 60 at 1 n.1. In its Answer and Cross Claim, ITW also refers to UD and UDB collectively as "the United Defendants." Doc. 65. In their motion for summary judgment and accompanying documents, UD and UDB refer to themselves as "United," and make no distinction between the two in arguing that the United Defendants was entitled to statutory immunity. Docs. 80–83.

1

and indemnity. Doc. 80. Carreon and ITW oppose summary judgment. Docs. 85, 88. For the reasons explained below, this Court denies the United Defendants' motion for summary judgment.

I.      Facts[2]

On September 12, 2022, a barn under construction in Summit, South Dakota, collapsed, injuring Carreon. Doc. 81 ¶ 1; Doc. 86 ¶ 1; Doc. 90 at 1. At the time of the collapse, Carreon was employed by Signet Builders, LLC (Signet) to work on the barn's construction. Doc. 81 ¶ 2; Doc. 86 ¶ 2; Doc. 90 ¶ 2. Because of his injuries, Carreon received workers' compensation benefits through Signet's workers' compensation insurer, American Casualty Company of Reading Pennsylvania, doing business as CNA. Doc. 81 ¶ 3; Doc. 86 ¶ 3; Doc. 90 ¶ 3. Carreon, the United Defendants, and ITW all agree that Carreon alleged in his Second Amended Complaint that the United Defendants served as "the general contractor and in a supervisory role of the construction project." Doc. 60 ¶ 40; Doc. 81 ¶ 4; Doc. 86 ¶ 4; Doc. 90 at 1. Beyond these facts, the parties diverge from each other, and indeed, from their own pleadings, principally on whether the United Defendants were a general contractor and on whether the United Defendants had workers' compensation insurance protection.

First, there is disagreement as to who the general contractor of the barn project was. Carreon and the United Defendants have flip-flopped on their positions since the pleading stage. The United Defendants, in their Answer to Carreon's Second Amended Complaint, denied Carreon's allegation that the United Defendants were the general contractor, Doc. 64 ¶ 15, but now

---

[2] Under Local Rule 56.1, the United Defendants filed a Statement of Material Facts, Doc. 81, accompanying its Motion for Summary Judgment, Doc. 80. Carreon responded by filing Plaintiff's Response to Defendant United's Statement of Material Facts, which included Plaintiff's Statement of Material Facts. Doc. 90. ITW also filed a Response to the Statement of Material Facts. Doc. 86. The following facts are either undisputed or recounted in the light most favorable to Carreon, the non-moving party, where supported by record evidence. Where necessary, this Court sets forth exactly how the parties disagree on certain facts.

rely on Carreon's allegation in support of their motion for summary judgment. However, rather than forthrightly state that they were the general contractor, the United Defendants, in their Statement of Material Facts, wrote "Plaintiff refers to United as the general contractor and in a supervisory role of the construction project." Doc. 81 ¶ 4 (cleaned up). The United Defendants further allege that they hired several subcontractors, including Signet. Id. ¶ 5.

Despite alleging in his Second Amended Complaint that the United Defendants were "the general contractor and in a supervisory role of the construction project," Doc. 60 ¶ 40, Carreon now asserts in his Response to United Development's Statement of Material Facts that the United Defendants were the project manager for BVD and that Josh TeVelde, owner of BVD, was the general contractor. Doc. 90 at 1–2. Carreon also disputes the United Defendants' statement that they hired subcontractors, including Signet. Id. at 2. Carreon states that it was TeVelde that contracted with Signet as a subcontractor. Id.

Unlike the United Defendants, ITW denied Carreon's allegation that the United Defendants were the general contractor for the construction project in its Answer. Doc. 65 at 8. However, in its crossclaim against the United Defendants for contribution and indemnity, ITW alleges that the United Defendants "contracted expressly or impliedly to oversee, direct, and supervise the logistics and all aspects regarding construction of the barn," "acted jointly as the construction manager that provided supervision over the construction of the barn," and "directed and coordinated BVD's general contracting of . . . Signet Construction." Id. at 14–15. Nevertheless, in its Response to the United Defendants' Statement of Material Facts, ITW again disputes that the United Defendants were the general contractor of the construction project. Doc. 86 ¶ 4. ITW also disputes whether the United Defendants were responsible for hiring Signet. Id. ¶ 5.

3

In addition to whether the United Defendants were the general contractor, there is disagreement over whether they had workers' compensation insurance on the project. The United Defendants claim they had workers' compensation insurance at the time of the barn collapse. Doc. 81 ¶ 6. However, Carreon and ITW dispute whether the United Defendants' workers' compensation insurance covered the barn construction project or Signet employees. Doc. 90 at 2; Doc. 86 ¶ 6.

## II.     Summary Judgment Standard

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). On summary judgment, the evidence is "viewed in the light most favorable to the nonmoving party." True v. Nebraska, 612 F.3d 676, 679 (8th Cir. 2010) (quoting Cordry v. Vanderbilt Motg. & Fin., Inc., 445 F.3d 1106, 1109 (8th Cir. 2006)). There is a genuine issue of material fact if a "reasonable jury [could] return a verdict for either party" on a particular issue. Mayer v. Countrywide Home Loans, 647 F.3d 789, 791 (8th Cir. 2011).

Under D.S.D. Civ. LR 56.1A, "[a]ll motions for summary judgment must be accompanied by a separate, short, and concise statement of the material facts as to which the moving party contends there is no genuine issue to be tried." Moreover, "[e]ach material fact must be presented in a separate numbered statement with an appropriate citation to the record in the case." D.S.D. Civ. LR 56.1B. A party opposing a properly made and supported motion for summary judgment must cite to particular materials in the record supporting the assertion that a fact is genuinely disputed. Fed. R. Civ. P. 56(c)(1); Gacek v. Owens & Minor Distrib., Inc., 666 F.3d 1142, 1145 (8th Cir. 2012). "Mere allegations, unsupported by specific facts or evidence beyond the

4

nonmoving party's own conclusions, are insufficient to withstand a motion for summary judgment." Thomas v. Corwin, 483 F.3d 516, 527 (8th Cir. 2007).

Here, there is a dispute of fact as to whether the United Defendants were a general contractor and whether they carried workers' compensation insurance. Whether these disputed facts are material depends on the underlying substantive law. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Id. This Court next turns to the underlying substantive law.

### III.  Discussion

Carreon alleges this Court has diversity jurisdiction under 28 U.S.C. § 1332. Doc. 60 at 1. A federal court sitting in diversity applies the substantive law of the forum state. See Cicle v. Chase Bank USA, 583 F.3d 549, 553 (8th Cir. 2009). When applying the substantive law of the forum state, a federal court must follow decisions of the state's supreme court interpreting the forum's law. See Brill as Tr. for Brill v. Mid-Century Ins. Co., 965 F.3d 656, 659 (8th Cir. 2020). But if a state's supreme court "has not spoken on an issue, [this Court] must predict how [the state supreme court] would decide the issue." Id. Here, the parties agree that South Dakota law governs this diversity jurisdiction case. Accordingly, the substantive law of South Dakota, and the decisions of the Supreme Court of South Dakota interpreting South Dakota law, provide the substantive law for this case. See Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938); B.B. v. Cont'l Ins. Co., 8 F.3d 1288, 1291 (8th Cir.1993).

Under the South Dakota Worker's Compensation Act, an "employee is guaranteed compensation if injured on the job, but the employer's liability is limited in exchange for this

certainty." Ries v. JM Custom Homes, LLC, 980 N.W.2d 217, 222 (S.D. 2022) (cleaned up and citation omitted). This "quid pro quo" is codified at SDCL § 62-3-2. Id. Section 62-3-2 states:

> The rights and remedies granted to an employee subject to this title, on account of personal injury or death arising out of and in the course of employment, shall exclude all other rights and remedies of the employee, the employee's personal representatives, dependents, or next of kin, on account of such injury or death against the employer or any employee, partner, officer, or director of the employer, except rights and remedies arising from intentional tort.

SDCL § 62-3-2. "The quid pro quo for the employer's assumption of liability for worker's compensation is immunity from suit by the employee." Thompson v. Mehlhaff, 698 N.W.2d 512, 518 (S.D. 2005). Accordingly, worker's compensation in South Dakota is "the exclusive method for compensating workers injured on the job in all but extraordinary circumstances," Harn v. Cont'l Lumber Co., 506 N.W.2d 91, 95 (S.D. 1993), and an injured "employee cannot sue the employer or fellow employees except for intentional torts," Thompson, 698 N.W.2d at 517.

This tradeoff is not limited to an employee's immediate employer. Section 62-3-10 provides:

> A principal, intermediate, or subcontractor is liable for compensation to any employee injured while in the employ of any subcontractor and engaged upon the subject matter of the contract, to the same extent as the immediate employer. Any principal, intermediate, or subcontractor who pays compensation under the provisions of this section may recover the amount paid from any person, who, independently of this section, would have been liable to pay compensation to the injured employee. Each claim for compensation under this section shall in the first instance be presented to and instituted against the immediate employer, but such proceeding does not constitute a waiver of the employee's rights to recover compensation under this title from the principal or intermediate contractor. However, the collection of full compensation from one employer bars recovery by the employee against any others. The employee may not collect from all a total compensation in excess of the amount for which any contractor is liable. This section applies only in cases where the injury occurred on, in, or about the premises on which the principal contractor has undertaken to execute work or which are otherwise under the contractor's control or management.

SDCL § 62-3-10. Thus, any "principal, intermediate, or subcontractor" is potentially liable for workers' compensation. "While the employee must first bring a claim against his immediate

6

employer, the principal remains liable to pay all or any unpaid part of the compensation due." Ries, 980 N.W.2d at 223 (cleaned up and citation omitted).

Section 62-3-10 extends to general contractors. Ries, 980 N.W.2d at 225. A "general contractor, which has availed itself of the workers' compensation statutes, is potentially liable to a subcontractor's employee for workers' compensation benefits under SDCL 62-3-10." Id. And as a consequence of a general contractor availing itself of the workers' compensation statutes, a subcontractor's employee's sole remedy against a general contractor is workers' compensation. Id. "[T]he [general] contractor is, in effect, . . . the employer for the purposes of the compensation statute." Id. at 224 (cleaned up and citation omitted). "To avail itself of statutory immunity, [a general contractor] must show that it has 'accepted' the workers' compensation statutes by securing benefits for the employees of its subcontractors." Id. at 225. The general contractor "is 'deemed to have accepted' if it has secured its obligation to pay benefits by purchasing insurance, entering into a reciprocal or interinsurance contract, or complying with self-insurance rules." Id. (quoting SDCL § 62-3-5; SDCL § 62-5-2, -3, -5). A general contractor "who fails to secure its liability using one of these methods 'shall be deemed to have elected not to operate under' the workers' compensation system." Id. (quoting SDCL § 62-5-7). As a result, an employee "who is employed by an employer who is deemed not to operate under [the workers' compensation system] . . . may elect to proceed against the employer in any action at law to recover damages for personal injury or death." SDCL § 62-3-11.

In Ries, the general contractor for a home building project, JM Custom Homes, subcontracted with Pine Tree Plumbing for the home's plumbing. Id. at 220. While on the job, Douglas Ries, a Pine Tree employee, "fell through an unanchored plywood stair leading from the main level to the basement." Id. Ries was injured and required multiple surgeries. Id. After the

7

incident, Ries filed a workers' compensation claim against Pine Tree and a negligence lawsuit against JM Custom Homes in South Dakota circuit court. Id. JM Custom Homes moved for summary judgment, arguing it was immune from suit based on SDCL § 62-3-2. Id. at 221. The circuit court agreed and granted JM Custom Home's motion, holding "workers' compensation was Ries's sole remedy." Id. The Supreme Court of South Dakota affirmed the circuit court's decision. Importantly, as the Supreme Court of South Dakota recognized, JM Custom Homes availed itself of the workers' compensation statutes by obtaining insurance that covered "the employees of its subcontractors." Id. at 225.

Moreover, "liability for benefits only runs up the ladder, not down." Thompson, 698 N.W.2d at 518. Because a general contractor is the "back-up provider of workers' compensation coverage," the general contractor receives immunity from suit. Id. However, "[t]he opposite is not true." Id. The Supreme Court of South Dakota held that "[w]hen the positions are reversed, and an employee of the general contractor . . . sues the subcontractor in negligence, . . . the subcontractor is a third party amenable to suit." Id. (citing 6 Larson, Worker's Compensation Law, § 111.04[2] (2002)). This is so because "the general contractor has a statutory liability to the subcontractor's employee, actual or potential, while the subcontractor has no comparable statutory liability to the general contractor's employee." Id. (citation omitted).

In Thompson, Terry Thompson was an employee of Spencer Quarries, the general contractor for a road paving project. 698 N.W.2d at 515. While driving a truck on the job, Thompson was killed after colliding with an employee of Mehlhaff Trucking, a subcontractor for the paving project. Id. Thompson's estate collected workers' compensation from Spencer Quarries and then filed a lawsuit against Mehlhaff Trucking, asserting vicarious liability for the wrongful death of Thompson caused by Mehlhaff Trucking's employee. Id. Mehlhaff Trucking

8

moved for summary judgment, arguing it was immune from suit and that Thompson's exclusive remedy was workers' compensation. Id. The trial court denied Mehlhaff Trucking's motion for summary judgment and the case proceeded to trial. Id. On appeal, Mehlhaff Trucking argued it was entitled to statutory immunity under SDCL § 62-3-2. Id. at 516. The South Dakota Supreme Court noted that Mehlhaff Trucking was not an insurer of Spencer Quarries' employees. Id. at 518. Accordingly, the Supreme Court of South Dakota rejected Mehlhaff Trucking's argument, holding "a subcontractor who is not liable for [workers' compensation] benefits is not entitled to such immunity." Id. at 519.

An immune party under SDCL § 62-3-2 cannot be sued for contribution or indemnity as a joint tortfeasor under South Dakota's Uniform Contribution Amongst Tortfeasors Act. Hagemann v. NJS Eng'g Inc., 632 N.W.2d 840, 843 (S.D. 2001). Although Hagemann pertained to a third-party defendant employee, the Supreme Court of South Dakota noted that "SDCL 62–3–2 makes it clear that employer and employee are in the same position when it comes to barring suit against them." Id.

Here, it is undisputed that Carreon's immediate employer was Signet. Doc. 81 ¶ 2; Doc. 86 ¶ 2; Doc. 90 at 1. Carreon received workers' compensation benefits from Signet. Doc. 81 ¶ 3; Doc. 86 ¶ 3; Doc. 90 at 1. Thus, under SDCL § 62-3-2, workers' compensation was Carreon's exclusive remedy against Signet, and Signet is immune from suit by Carreon. See Thompson, 698 N.W.2d at 517. But a "principal" or "intermediate" under SDCL § 62-3-10 may also be immune to suit. When applicable, the immunity may extend to general contractors. Ries, 980 N.W.2d at 225. Thus, whether the United Defendants were a general contractor on the barn construction project is a material fact.

9

The United Defendants argue that they were the general contractor for the construction project and hired Signet as a subcontractor. Because the United Defendants were "up the ladder" from Signet, they reason that they are immune from suit as a "principal" or "intermediate" under SDCL § 62-3-10. In support of their claim that they were a general contractor, the United Defendants cite only to Paragraph 40 of Carreon's Second Amended Complaint, an allegation the United Defendants had denied. Doc. 81 ¶ 4. In support of their claim that they hired Signet, the United Defendants cite to a single invoice from December 2021 for work Signet completed on the Riverbend Parlor project in Trent, South Dakota. Doc. 82-3.

In support of his claim that the United Defendants were not the general contractor, Carreon provided a copy of the Master Agreement for Project Management and Construction ("the PMC Agreement"), Doc. 89-2, and excerpts of the deposition transcript of the United Defendants' owner, Arjan Blok, Doc. 89-4. The PMC Agreement was entered into between "Blooming Valley Dairy/Josh TeVelde" and UDB. Doc. 89-2 at 2. TeVelde is identified in the PMC Agreement as "Owner" and UDB is identified as the "Project Management and Constructions Management Consultant or PM/CM." Id. The PMC Agreement expressly states that UDB "represents it is not the General Contractor for the projects." Id. The PMC Agreement further states TeVelde "is the project's General Manager." Id. Moreover, in his deposition, Blok stated that TeVelde was the general contractor and that all subcontractors, including Signet, were subcontracted through TeVelde. Doc. 89-4 at 7, 10. Blok also described UD's role in the construction project as project management. Id. at 6.

ITW, to support its position that the United Defendants were not the general contractor, cites to excerpts of the deposition transcript of Blok, Doc. 87-1, a copy of the PMC Agreement, Doc. 87-2, UDB's Answers to Plaintiff's First Set of Interrogatories, Requests for Production, and

10

Requests for Admission, Doc. 87-3, UD's Answers to Plaintiff's First Set of Interrogatories, Requests for Production, and Requests for Admission, Doc. 87-4, UD's Answers to ITW's First Set of Interrogatories, Doc. 87-5, and a Farm Labor Agreement signed by Signet, UDB, and TeVelde ("FL Agreement"), Doc. 87-6. ITW first points out that UDB and UD are separate legal entities, and that only UDB is a party to the PMC Agreement. Doc. 86 ¶ 4. Citing UDB's and UD's Answers to Plaintiff's First Set of Interrogatories, Requests for Production, and Requests for Admission, Docs. 87-3, 87-4, ITW states that UDB has placed into question whether it had any oversight responsibility by denying responsibility "for the safety of all individuals and entities operating at the Barn project worksite" and that it "had the authority to halt the Barn project in the event of safety concerns." Doc. 86 ¶ 4. Rather, ITW asserts that, based on Blok's deposition testimony, "UDB was responsible only for ensuring there were no deviations from the engineered construction drawings" and that "Signet was responsible for its own construction" of the barn. Id. Indeed, the FL Agreement entered into by UDB and Signet was signed by TeVelde and named Signet as the "General Contractor." Doc. 87-6 at 3.

Carreon and ITW have identified more than sufficient evidence in the record to create a genuine dispute of material fact as to whether the United Defendants were the general contractor on the barn construction project. Because there exists a genuine dispute of material fact as to whether the United Defendants were the general contractor and thus, the "principal" under SDCL § 62-3-10, summary judgment must be denied.

Even if the United Defendants were the general contractor, they must still avail themselves of statutory immunity by "secur[ing] its obligation to pay benefits by purchasing insurance, entering into a reciprocal or interinsurance contract, or complying with self-insurance rules." Ries, 980 N.W.2d at 225. Thus, whether the United Defendants had secured workers' compensation

11

insurance is material to whether they can be sued by Carreon. To support their claim of having workers' compensation insurance, the United Defendants provided a copy of a workers' compensation policy naming UD, UDB, and United Development Management Company, LLC as the insured parties with a policy period starting on October 1, 2021, and expiring on October 1, 2022. Doc. 82-4 at 1, 3. The policy identifies two covered locations, both in Brookings, South Dakota. Id. at 3.

Carreon disputes that the United Defendants' policy covered the barn construction project or Signet employees, noting that the policy only names the United Defendants' entities as covered parties and that the two covered locations are both United Development business locations. Doc. 90 at 2. ITW does not dispute that the United Defendants had "*some* workers'-compensation insurance coverage," but disputes whether the insurance would have covered the barn collapse incident. Doc. 86 ¶ 6. ITW points out that the listed covered activities may not cover barn construction. ITW concedes that carpentry is a covered activity, but without listing specific types of carpentry or building raising or moving or any type of roofing construction. Id. Viewing the facts in the light most favorable to the nonmoving parties, there exists a genuine dispute of material fact as to whether the United Defendants carried workers' compensation insurance that covered the barn project and Signet employees. Accordingly, summary judgment must be denied.

Although a party protected under SDCL § 62-3-2 cannot be sued for contribution or indemnity as a joint tortfeasor under South Dakota's Uniform Contribution Amongst Tortfeasors Act, see Hagemann, 632 N.W.2d at 843, there is a genuine dispute of material fact as to whether the United Defendants are entitled to the protection of § 62-3-2. Accordingly, summary judgment for the United Defendants on ITW's crossclaims for contribution and indemnity must also be denied.

## IV. Conclusion

For the foregoing reasons, it is

ORDERED that the United Defendants' Motion for Summary Judgment, Doc. 80, is denied.

DATED this 18th day of August, 2025.

                BY THE COURT:

                ROBERTO A. LANGE
                CHIEF JUDGE