UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| JONATHAN RUIZ CARREON,<br><br>Plaintiff,<br><br>vs.<br><br>ALPINE ITW BCG INC., ENERGY PANEL STRUCTURES, INC., UNITED DEVELOPMENT, LLC, JOSHUA TEVELDE, ITW BUILDING COMPONENTS GROUP INC., ILLINOIS TOOL WORKS INC., UNITED DEVELOPMENT BUILDERS, LLC, BLOOMING VALLEY DAIRY, LLC,<br><br>Defendants. | 4:23-CV-04108-RAL<br><br>OPINION AND ORDER GRANTING SUMMARY JUDGMENT TO UNITED DEFENDANTS |
| FRANCISCO CASTRO,<br><br>Plaintiff,<br><br>vs.<br><br>ALPINE ITW BCG INC., ENERGY PANEL STRUCTURES, INC., UNITED DEVELOPMENT, LLC, JOSHUA TEVELDE, ITW BUILDING COMPONENTS GROUP INC., ILLINOIS TOOL WORKS INC., UNITED DEVELOPMENT BUILDERS, LLC, BLOOMING VALLEY DAIRY, LLC,<br><br>Defendants. | 4:24-CV-04028-RAL<br><br>OPINION AND ORDER GRANTING SUMMARY JUDGMENT TO UNITED DEFENDANTS |

Plaintiffs Jonathan Ruiz Carreon and Francisco Castro ("Plaintiffs") were seriously injured on September 12, 2022, at their worksite when a partially constructed dairy barn collapsed on

them. Ruiz Carreon[1] Doc. 1 ¶ 10; Castro[2] Doc. 1 ¶ 12. Plaintiffs filed separate complaints, raising various tort claims against Defendants Energy Panel Structures, Inc., United Development, LLC ("UD"), ITW Building Components Group Inc., United Development Builders, LLC ("UDB"), and Blooming Valley Dairy, LLC ("BVD"). Ruiz Carreon Doc. 60; Castro Doc. 40. Before discovery closed, UD and UDB (collectively "United Defendants")[3] filed motions for summary judgment in each case, arguing that workers' compensation law protected them from Plaintiffs' claims for negligence and gross negligence and crossclaims for contribution and indemnity. Ruiz Carreon Doc. 80; Castro Doc. 55. This Court denied the United Defendants' initial motions for summary judgment because of questions of fact on whether the United Defendants were a "principal" (such as a general contractor) under South Dakota workers' compensation law and, if so, whether the United Defendants carried workers' compensation coverage extending to the worksite where Plaintiffs were injured. Ruiz Carreon Doc. 99; Castro Doc. 80. With discovery now complete and no genuine issue of material fact remaining on those two issues, this Court grants Defendants' renewed motions for summary judgment, Ruiz Carreon Doc. 122; Castro Doc. 102.

---

[1] Plaintiff Jonathan Ruiz Carreon sued Defendants in case No. 23-CV-04108. Citations to the docket for Ruiz Carreon's matter, 23-CV-04108, are preceded by "Ruiz Carreon."

[2] Plaintiff Francisco Castro sued Defendants in case No. 24-CV-04028. Citations to the docket for Castro's matter, 24-CV-04028, are proceeded by "Castro."

[3] UD and UDB are two distinct entities with a shared owner, Arjan Blok. Ruiz Carreon Doc. 89-4 at 4–5; Castro Doc. 64-4 at 4–5. Many filings in both cases refer to UD and UDB collectively. The Second Amended Complaints in both cases refer to UD and UDB collectively as "the United Defendants," Ruiz Carreon Doc. 60 at 1 n.1; Castro Doc. 40 at 1 n.1, and the negligence and gross negligence causes of action in Count V are alleged against the "United Defendants." Ruiz Carreon Doc. 60 at 11; Castro Doc. 40 at 11. In their motions for summary judgment and accompanying documents, UD and UDB refer to themselves as "United," and make no distinction between the two entities in arguing that the United Defendants were entitled to statutory immunity. See Ruiz Carreon Docs. 80–83; Castro Docs. 55–58. At oral argument, counsel for the United Defendants continued to refer to UD and UDB jointly.

## I. Facts[4]

On September 12, 2022, a large dairy barn or "milking parlor" under construction near Summit, South Dakota, collapsed, badly injuring Plaintiffs. Ruiz Carreon Doc. 123 ¶ 7, Doc. 128 at 4; Castro Doc. 103 ¶ 7, Doc. 108 at 4. At the time of the collapse, Plaintiffs were employed by and working within the scope of their employment for Signet Builders, LLC (Signet). Ruiz Carreon Doc. 123 ¶ 1; Castro Doc. 103 ¶ 1. Because of their injuries, Plaintiffs received workers' compensation benefits through Signet's workers' compensation insurer, American Casualty Company of Reading, Pennsylvania, doing business as "CNA." Ruiz Carreon Doc. 81 ¶ 3, Doc. 86 ¶ 3, Doc. 90 ¶ 3; Castro Doc. 56 ¶ 3, Doc. 61 ¶ 3, Doc. 65 ¶ 3.

Plaintiffs initially asserted that the United Defendants served as "the general contractor and in a supervisory role of the construction project." Ruiz Carreon Doc. 60 ¶ 40, Doc. 81 ¶ 4, Doc. 86 ¶ 4, Doc. 90 at 1; Castro Doc. 40 ¶ 40, Doc. 56 ¶ 4, Doc. 61 ¶ 4, Doc. 65 at 1. In their Answers, the United Defendants denied the allegations that they were the general contractor but then relied on those allegations when initially arguing for summary judgment claiming that, as the general contractor, they were entitled to workers' compensation protection from suit under South Dakota law. Ruiz Carreon Doc. 81 ¶ 4; Castro Doc. 56 at ¶ 4. Plaintiffs, in opposing the initial summary judgment motions then asserted, contrary to their prior allegations that the United Defendants were the general contractor, that the project owner Blooming Valley Dairy, LLC ("BVD") and/or Josh TeVelde, owner of BVD, was the general contractor. Ruiz Carreon Doc. 90 at 1–2; Castro Doc. 65 at 1–2. With the United Defendants and Plaintiffs seemingly having flip-flopped on their initial

---

[4] Under Local Rule 56.1, the United Defendants filed a Statement of Undisputed Material Facts accompanying its renewed motion for summary judgment. Ruiz Carreon Doc. 123; Castro Doc. 103. Plaintiffs responded by each filing a response to the United Defendants' statement of material facts. Ruiz Carreon Doc. 128; Castro Doc. 108. The following facts are either undisputed or recounted in the light most favorable to Plaintiffs, the non-moving parties.

positions and with a mix of information on the United Defendants' role in the project at the time, this Court deemed there to be a question of fact on whether the United Defendants were the general contractor, precluding summary judgment. Discovery then continued and concluded.

The facts not subject to genuine dispute include that Plaintiffs' employer Signet and the United Defendants had a relationship that predated the Summit dairy barn project where Plaintiffs were injured. On January 4, 2021, UDB and Signet executed a rather skeletal Farm Labor Agreement describing UDB as a "Farm Company" and Signet as a "Farm Labor Contractor" for BVD projects. Ruiz Carreon Doc. 87-6 at 1; Castro Doc. 62-6 at 1. Under this agreement, UDB had "control of the worksite(s)" and BVD's TeVelde signed as the "Farmer/Landowner/Farm Company/Livestock Operator" to grant Signet—listed in a blank for "(name of General Contractor)"—access to property to construct livestock confinement buildings. Ruiz Carreon Doc. 87-6 at 2–3; Castro Doc. 62-6 at 2–3.

On March 9, 2022, UDB and BVD entered into a Master Agreement for Project Management and Construction Management Service ("Master Agreement") relating to construction of the dairy barn at issue. Ruiz Carreon Doc. 127-2; Castro Doc. 107-2. The Master Agreement contains a representation by UDB that it is not the general contractor. Ruiz Carreon Doc. 127-2 at 2; Castro Doc. 107-2 at 2. The Master Agreement calls BVD the "General Manager" and UDB the "Project Management and Construction Management Consultant or PM/CM." Ruiz Carreon Doc. 127-2 at 2; Castro Doc. 107-2 at 2. Attachment A to the Master Agreement contains the Standard Conditions of Agreement and defines UDB's role as the PM/CM as follows:

> **A. PROJECT & CONSTRUCTION MANAGEMENT SERVICES**
>
> The responsibilities of the PM/CM during concept, design, procurement, construction commissioning, and closeout of the project include:

1. Establishing necessary items for completion of the project from engineering, drawing, materials, suppliers, subcontractors, planning and layout, and design;
2. Estimating Costs;
3. Consistent review of work and progress being made on the project;
4. Supervision of all work being done and all doing the work;
5. Staying on budget and/or submitting change orders necessary to complete the project;
6. Scheduling and timeline of work to be completed;
7. Negotiating with vendors, subcontractors, suppliers;
8. Management of day-to-day work with vendors, subcontractors, and suppliers; and
9. Collaboration with engineers, construction crews, and subcontractors.

**B. PERSONNEL**

1. PM/CM shall staff the project with personnel reasonably acceptable to the Owner.
2. PM/CM may make changes in the staffing or may hire or use independent consultants in connections with the work with advance (oral or written) notice to Owner;
3. PM/CM agrees to pay any employee on this project in accordance with applicable law.

Ruiz Carreon Doc. 127-2 at 5; Castro Doc. 107-2 at 5. In short, the Master Agreement makes clear that UDB is not the "general contractor," but assigns to UDB as "project management and construction management consultant or PM/CM" many of the functions typical of a general contractor. Ruiz Carreon Doc. 127-2 at 2, 5; Castro Doc. 107-2 at 2, 5.

The witness testimony in discovery bears out that the United Defendants disavowed being the general contractor while performing tasks typical of a general contractor. UDB's owner Arjan Blok testified that the United Defendants were construction managers and not the general contractor and that Signet and other subcontractors were hired and paid through BVD's owner TeVelde. Ruiz Carreon Doc. 127-4 at 10–11; Castro Doc. 107-4 at 10–11. When asked what the difference was between being a general contractor and construction manager, Blok testified that when

> We have a general contractor agreement, we take care of all the payments. We take care of all the tax that have to be paid, excise tax. We pretty much finance the company project until it is done. A project management, we manage the project to make sure that everything will be ordered on time, will be built in the right order, make sure that it is built the way that the drawings explain it.

Ruiz Carreon Doc. 127-4 at 7–8; Castro Doc. 107-4 at 7–8.

Signet's owner Orville Schoenfeld testified that he understood Signet to be a subcontractor to the United Defendants. Ruiz Carreon Doc. 124-2 at 4; Castro Doc. 104-2 at 4. The testimony of Signet's executive vice president Mike Zuhlke was:

> Q: (by Plaintiffs' counsel) Who was it that reached out to you? Was it United Development? Was it Josh Tevelde? Was it EPS?
> A: (by Signet Executive Vice President Zuhlke) United Development would've reached out to me.
> Q: Understood. So, you guys got brought out to this Blooming Valley -- you guys at Signet, sorry, got brought out to this Blooming Valley Dairy project by United Development, right?
> A: Yes.
> Q: Okay. And United Development, what was your understanding of their role for this Blooming Valley Dairy project?
> A: I believe their role was construction management of the project.
> Q: And putting it in terms that I'm more familiar with, is it fair to say they're kind of the general contractor for this project?
> A: That's what—yes. That is what I would've considered it, very similar to that.
> Q: Got it. So whether we call it construction management, general contractor, functionally it's the same kind of thing?
> A: Yes.

Ruiz Carreon Doc. 124-1 at 4; Castro Doc. 104-1 at 4.

Plaintiffs' theory of liability against the United Defendants is that they had control and management of the worksite, that Signet worked under the United Defendants, and that the United Defendants did not ensure that the worksite was safe which resulted in Plaintiffs' injuries. Plaintiffs' expert Benjamin Gibson's report observed that

> Under this project and construction management organizational framework, United would have the overall responsibility for managing the project scopes of work, which would include the coordination and collaboration between the design and

> engineering aspects, materials, suppliers, subcontractors, layout and design, and United would need to establish all the necessary items for the scopes of the project for its successful completion.

Ruiz Carreon Doc. 130-1 at 2; Castro Doc. 110-1 at 2. Gibson's report continued that UDB "would be considered the *controlling employer* under OSHA's Multi-Employer Policy" and "defined as the *Project Constructor*, per ANSI A10.1 . . . [responsible to] monitor the construction and ensure and verify that Signet's work was precisely following the EPS design and instructions, including any instructions about bracing or temporary bracing." Ruiz Carreon Doc. 130-1 at 3–4 (emphasis in original); Castro Doc. 110-1 at 3–4 (emphasis in original). Plaintiffs' other liability expert James Drebelbis wrote that "United had authority and control over the construction process. And hired Signet[5] and EPS. Signet as the subcontractor of United had authority over the erection process but did so under the direction of United." Ruiz Carreon Doc. 130-2 at 2; Castro Doc. 110-2 at 2.

At the hearing on October 30, 2026, the only explanation offered for why all contracting parties on the BVD dairy barn shunned the label "general contractor" was to avoid the South Dakota Contractor's Excise Tax, which is a 2% tax on total gross receipts on the contract price, including labor and materials. See SDCL § 10-46A.

After the collapse of the dairy barn under construction, both Plaintiffs collected workers' compensation benefits through Signet's workers' compensation policy. The United Defendants likewise had a workers' compensation policy through Acuity Insurance that applied in South Dakota where the dairy barn was under construction. The policy extended to UDB and UD as

[5] The testimony of Signet's representatives and the United Defendants, together with the exhibits, determines who hired Signet. This quote appears here to explain that Plaintiffs' theory of liability is that the United Defendants controlled the worksite, neglected to supervise Signet and others properly, and failed to ensure a safe worksite.

named insureds and, in General Section part E, covered all workplaces in "Item 3A states" with South Dakota listed in 3A. Ruiz Carreon Doc. 124-3 at 5; Castro Doc. 104-3 at 5. The United Defendants argue that South Dakota law insulates it from liability to Plaintiffs based on the existence of the workers' compensation policy and Plaintiffs' eligibility thereunder. Plaintiffs disagree.

## II. Summary Judgment Standard

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). On summary judgment, the evidence is "viewed in the light most favorable to the nonmoving party." True v. Nebraska, 612 F.3d 676, 679 (8th Cir. 2010) (quoting Cordry v. Vanderbilt Motg. & Fin., Inc., 445 F.3d 1106, 1109 (8th Cir. 2006)). There is a genuine issue of material fact if a "reasonable jury [could] return a verdict for either party" on a particular issue. Mayer v. Countrywide Home Loans, 647 F.3d 789, 791 (8th Cir. 2011).

Under D.S.D. Civ. LR 56.1A, "[a]ll motions for summary judgment must be accompanied by a separate, short, and concise statement of the material facts as to which the moving party contends there is no genuine issue to be tried." Moreover, "[e]ach material fact must be presented in a separate numbered statement with an appropriate citation to the record in the case." D.S.D. Civ. LR 56.1B. A party opposing a properly made and supported motion for summary judgment must cite to particular materials in the record supporting the assertion that a fact is genuinely disputed. Fed. R. Civ. P. 56(c)(1); Gacek v. Owens & Minor Distrib., Inc., 666 F.3d 1142, 1145 (8th Cir. 2012). "Mere allegations, unsupported by specific facts or evidence beyond the

nonmoving party's own conclusions, are insufficient to withstand a motion for summary judgment." Thomas v. Corwin, 483 F.3d 516, 527 (8th Cir. 2007).

Here, the parties debate whether the United Defendants were a "principal" within the meaning of SDCL § 62-3-10 and whether the United Defendants carried workers' compensation insurance extending to the worksite. These two questions require interpretation of a statute and of an insurance policy, both of which ultimately are questions of law. How the parties structured their relationships complicates answering these questions. Whether genuine disputes of material facts exist on these issues depends on the underlying substantive law. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."). This Court next turns to the underlying substantive law.

## III. Discussion

This Court has diversity jurisdiction over this case under 28 U.S.C. § 1332. Ruiz Carreon Doc. 60 ¶ 2; Castro Doc. 40 ¶ 2. A federal court sitting in diversity applies the substantive law of the forum state. See Cicle v. Chase Bank USA, 583 F.3d 549, 553 (8th Cir. 2009). When applying the substantive law of the forum state, a federal court must follow decisions of the state's supreme court interpreting the forum's law. See Brill as Tr. for Brill v. Mid-Century Ins., 965 F.3d 656, 659 (8th Cir. 2020). But if a state's supreme court "has not spoken on an issue, [this Court] must predict how [the state supreme court] would decide the issue." Id. South Dakota law governs this diversity jurisdiction case. Accordingly, the substantive law of South Dakota and the decisions of the Supreme Court of South Dakota interpreting South Dakota law provide the substantive law in this case. See Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938); B.B. v. Cont'l Ins., 8 F.3d 1288, 1291 (8th Cir. 1993).

Under South Dakota workers' compensation law, an "employee is guaranteed compensation if injured on the job, but the employer's liability is limited in exchange for this certainty." Ries v. JM Custom Homes, LLC, 980 N.W.2d 217, 222 (S.D. 2022) (cleaned up and citation omitted). This "quid pro quo" is codified at SDCL § 62-3-2. Id. Section 62-3-2 states:

> The rights and remedies granted to an employee subject to this title, on account of personal injury or death arising out of and in the course of employment, shall exclude all other rights and remedies of the employee, the employee's personal representatives, dependents, or next of kin, on account of such injury or death against the employer or any employee, partner, officer, or director of the employer, except rights and remedies arising from intentional tort.

SDCL § 62-3-2. "The *quid pro quo* for the employer's assumption of liability for worker's compensation is immunity from suit by the employee." Thompson v. Mehlhaff, 698 N.W.2d 512, 518 (S.D. 2005) (emphasis in original). Accordingly, worker's compensation in South Dakota is "the exclusive method for compensating workers injured on the job in all but extraordinary circumstances," Harn v. Cont'l Lumber Co., 506 N.W.2d 91, 95 (S.D. 1993), and an injured "employee cannot sue the employer or fellow employees except for intentional torts," Thompson, 698 N.W.2d at 517.

This tradeoff is not limited to an employee's immediate employer. South Dakota law provides:

> A principal, intermediate, or subcontractor is liable for compensation to any employee injured while in the employ of any subcontractor and engaged upon the subject matter of the contract, to the same extent as the immediate employer. Any principal, intermediate, or subcontractor who pays compensation under the provisions of this section may recover the amount paid from any person, who, independently of this section, would have been liable to pay compensation to the injured employee. Each claim for compensation under this section shall in the first instance be presented to and instituted against the immediate employer, but such proceeding does not constitute a waiver of the employee's rights to recover compensation under this title from the principal or intermediate contractor. However, the collection of full compensation from one employer bars recovery by the employee against any others. The employee may not collect from all a total compensation in excess of the amount for which any contractor is liable. This section applies only in cases where the injury occurred on, in, or about the premises

> on which the principal contractor has undertaken to execute work or which are otherwise under the contractor's control or management.

SDCL § 62-3-10. Thus, any "principal, intermediate, or subcontractor" is potentially liable for workers' compensation. "While the employee must first bring a claim against his immediate employer, the principal remains liable to pay all or any unpaid part of the compensation due." Ries, 980 N.W.2d at 223 (cleaned up and citation omitted).

Other states' workers' compensation statutes extend statutory employer immunity to a "principal" or to "general" contractor. 4 Larson's Workers' Compensation Law, § 70.03 (2002). Decisions from other states on whether an entity qualifies for workers' compensation immunity as a "principal" are varied and necessarily fact dependent. See, e.g., Mickelson v. N. Plains Nat. Gas Co., 664 F.Supp. 630 (D. Neb. 1986) (applying South Dakota law); Byrd v. Mahle, Inc., No. 03A01-9301-CV-00006, 1993 WL 305807 (Tenn. App. Nov. 29, 1993); Wright Assoc., Inc. v. Rieder, 277 S.E.2d 41 (Ga. 1981). Assuredly, workers' compensation immunity should not extend to those who are not direct employers or principals, and should extend only to those entities whose compensation coverage could protect an injured employee where the direct employer's workers' compensation does not cover the employee. 10 Larson's Workers' Compensation Law, § 111.04 (2002).

The Supreme Court of South Dakota has addressed what "principal" means under SDCL § 62-3-10 and its predecessor statute on a handful of occasions. See, e.g., Metzger v. J.F. Brunken & Son, Inc., 169 N.W.2d 261, 264 (S.D. 1969) (subcontractor's employee could not sue "principal contractor" for damages due to workers' compensation protection); Blumhardt v. Hartung, 283 N.W.2d 229, 235 (S.D. 1979) (questions of fact on extent of control precluded summary judgment based on workers' compensation immunity for property owner of site where worker was injured). None of these South Dakota cases rely on typical definitions of "principal" from principal-agency

law but focus on the relationship between the direct employer and the entity claiming workers' compensation protection. The two most recent Supreme Court of South Dakota decisions, Ries and Thompson, illustrate when an entity that is not the direct employer can and cannot claim the protection of workers' compensation immunity.

In Ries, the general contractor for a home building project, JM Custom Homes, subcontracted with Pine Tree Plumbing for the home's plumbing. 980 N.W.2d at 220. While on the job, Douglas Ries, a Pine Tree employee, "fell through an unanchored plywood stair leading from the main level to the basement." Id. Ries was injured and required multiple surgeries. Id. After the incident, Ries filed a workers' compensation claim against Pine Tree and a negligence lawsuit against JM Custom Homes in South Dakota circuit court. Id. JM Custom Homes moved for summary judgment, arguing it was immune from suit under SDCL § 62-3-2. Id. at 221. The circuit court agreed and granted JM Custom Homes' motion, holding "workers' compensation was Ries's sole remedy." Id. The Supreme Court of South Dakota affirmed the circuit court's decision.

In Ries, the Supreme Court of South Dakota made clear that the word "principal" in § 62-3-10 extends to general contractors. Id. at 225. A "general contractor, which has availed itself of the workers' compensation statutes, is potentially liable to a subcontractor's employee for workers' compensation benefits under SDCL [§] 62-3-10." Id. As a consequence of a general contractor availing itself of the workers' compensation statutes, a subcontractor's employee's sole remedy against a general contractor is workers' compensation. Id. "[T]he [general] contractor is, in effect, . . . the employer for the purposes of the compensation statute." Id. at 224 (cleaned up and citation omitted). "To avail itself of statutory immunity, [the general contractor] must show that it has 'accepted' the workers' compensation statutes by securing benefits for the employees of its subcontractors." Id. at 225. The general contractor "is 'deemed to have accepted' if it has secured

its obligation to pay benefits by purchasing insurance, entering into a reciprocal or interinsurance contract, or complying with self-insurance rules." Id. (quoting SDCL § 62-3-5; SDCL § 62-5-2, to -3, -5). A general contractor "who fails to secure its liability using one of these methods 'shall be deemed to have elected not to operate under' the workers' compensation system." Id. (quoting SDCL § 62-5-7). As a result, an employee "who is employed by an employer who is deemed not to operate under [the workers' compensation system] . . . may elect to proceed against the employer in any action at law to recover damages for personal injury or death." SDCL § 62-3-11. In Ries, the Supreme Court of South Dakota recognized that JM Custom Homes had availed itself of the workers' compensation statutes by obtaining insurance that covered "the employees of its subcontractors," and thus was entitled to the protection of workers' compensation. 980 N.W.2d at 225.

In Thompson, by contrast, Terry Thompson was an employee of Spencer Quarries, the general contractor for a road paving project. 698 N.W.2d at 515. While driving a truck on the job, Thompson was killed after colliding with a vehicle driven by an employee of Mehlhaff Trucking, a subcontractor for the paving project. Id. Thompson's estate collected workers' compensation from Spencer Quarries and then filed a lawsuit against Mehlhaff Trucking, asserting vicarious liability for the wrongful death of Thompson caused by Mehlhaff Trucking's employee. Id. Mehlhaff Trucking moved for summary judgment, arguing that Thompson's exclusive remedy was workers' compensation. Id. The trial court denied Mehlhaff Trucking's motion for summary judgment and the case proceeded to trial. Id. On appeal, Mehlhaff Trucking argued it was entitled to statutory immunity under SDCL § 62-3-2. See id. at 516. The Supreme Court of South Dakota noted that Mehlhaff Trucking was not an insurer of Spencer Quarries' employees, and rejected

Mehlhaff Trucking's argument, holding "a subcontractor who is not liable for [workers' compensation] benefits is not entitled to such immunity." Id. at 519.

The Supreme Court of South Dakota refused to allow a subcontractor like Mehlhaff Trucking to claim protection of workers' compensation under SDCL § 62-3-10 because "liability for benefits only runs up the ladder, not down." Id. at 518. The Thompson court reasoned that a general contractor is the "back-up provider of workers' compensation coverage," entitling the general contractor to receive immunity from suit, but "[t]he opposite is not true." Id. The court in Thompson further held that "[w]hen the positions are reversed, and an employee of the general contractor . . . sues the subcontractor in negligence, . . . the subcontractor is a third party amenable to suit." Id. (citing 6 Larson, Workers' Compensation Law, § 111.04[2] (2002)). This is so because "the general contractor has a statutory liability to the subcontractor's employee, actual or potential, while the subcontractor has no comparable statutory liability to the general contractor's employee." Id. (citation omitted).

An immune party under SDCL § 62-3-2 cannot be sued for contribution or indemnity as a joint tortfeasor under South Dakota's Uniform Contribution Amongst Tortfeasors Act. Hagemann v. NJS Eng'g Inc., 632 N.W.2d 840, 843 (S.D. 2001). Although Hagemann pertained to a third-party defendant employee, the Supreme Court of South Dakota noted that "SDCL [§] 62-3-2 makes it clear that employer and employee are in the same position when it comes to barring suit against them." Id.

Plaintiffs' immediate employer was Signet. Ruiz Carreon Doc. 81 ¶ 2, Doc. 86 ¶ 2, Doc. 90 at 1; Castro Doc. 56 ¶ 2, Doc. 61 ¶ 2, Doc. 65 at 1. Plaintiffs received workers' compensation benefits from Signet's insurer. Ruiz Carreon Doc. 81 ¶ 3, Doc. 86 ¶ 3, Doc. 90 at 1; Castro Doc. 56 ¶ 3, Doc. 61 ¶ 3, Doc. 65 at 1. Thus, under SDCL § 62-3-2, workers' compensation is Plaintiffs'

exclusive remedy against Signet, and Signet is immune from suit by Plaintiffs. See Thompson, 698 N.W.2d at 517. In addition to Signet, a "principal" or "intermediate" under SDCL § 62-3-10, such as a general contractor, may also be immune to being sued by Plaintiffs. Ries, 980 N.W.2d at 225. SDCL § 62-3-10 does not limit a "principal" or "intermediate" to general contractors and indeed in its text refers to "the principal contractor."

The United Defendants were "up the ladder" from Signet in the sense that UDB was the project manager and construction manager responsible under its Farm Labor Agreement with Signet for "control of the worksite(s)." UDB was charged in its Master Agreement with BVD with "supervision of all work being done and all doing the work," "staying on budget and/or submitting change orders necessary to complete the project," "negotiating with vendors, subcontractors, suppliers," "management of day-to-day work with vendors, subcontractors, and suppliers," and "collaboration with engineers, construction crews, and subcontractors." Ruiz Carreon Doc. 127-2 at 5; Castro Doc. 107-2 at 5. Among other things, UDB committed "to pay any employee on this project in accordance with applicable law." Id. The only difference between a general contractor, a recognized "principal" under Ries, and UDB appears to be that UDB shunned the title, didn't pay the South Dakota contractor's excise tax, and had the owner BVD directly pay subcontractors. Signet's owner viewed the United Defendants as the general contractor, and Signet's executive vice president testified that the United Defendants functioned like a general contractor. Ruiz Carreon Doc. 127-6 at 4, Doc. 127-7 at 3; Castro Doc. 107-6 at 4, Doc. 107-7 at 3. The facts not subject to genuine dispute reveal that UDB was a "principal contractor" or "intermediate" under SDCL § 62-3-10 for the dairy barn construction project where Plaintiffs were injured.

The Supreme Court of South Dakota has made clear that it "construes workers' compensation statutes liberally to provide coverage even when the worker would prefer to avoid it." Harn, 506 N.W.2d at 95. If Signet lacked workers' compensation coverage, Plaintiffs could look upstream for workers' compensation coverage from UDB as the "principal" contractor or even "principal." That the parties sought to evade the South Dakota contractor's excise tax does not appear to be a factor in determining who qualifies as a "principal" or "principal contractor" under SDCL § 62-3-10 and is more an issue for the South Dakota Department of Revenue or perhaps the South Dakota legislature to address.

Even if the United Defendants were the general contractor, they must still avail themselves of statutory immunity by "secur[ing] its obligation to pay benefits by purchasing insurance, entering into a reciprocal or interinsurance contract, or complying with self-insurance rules." Ries, 980 N.W.2d at 225. The United Defendants had a workers' compensation policy naming UD, UDB, and United Development Management Company, LLC, as the insured parties with a policy period starting on October 1, 2021, and expiring on October 1, 2022. Ruiz Carreon Doc. 82-4 at 1, 3; Castro Doc. 57-4 at 1, 3. The dairy barn collapse occurred on September 12, 2022, near Summit, South Dakota. Ruiz Carreon Doc. 60 ¶¶ 11–12; Castro Doc. 40 ¶¶ 11–12. The workers' compensation policy by its terms covers the United Defendants' worksites in South Dakota. Ruiz Carreon Doc. 82-4 at 3; Castro Doc. 57-4 at 3. This Court perceives no genuine issue of material fact on the question of the United Defendants' workers' compensation policy extending to cover the worksite in question and potentially employees of subcontractors like Signet were they not otherwise covered by a workers' compensation policy.

## IV. Conclusion

For the foregoing reasons, it is

ORDERED that the United Defendants' Renewed Motions for Summary Judgment, Ruiz Carreon Doc. 122, and Castro Doc. 102, are granted.

DATED this 25th day of November, 2026.

BY THE COURT:

ROBERTO A. LANGE
CHIEF JUDGE